**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| WHOOP, INC., | : | Civil Action No. 1:25-cv-05766 |
| Plaintiff, | : |  |
|  | : | **COMPLAINT FOR DAMAGES,** |
| v. | : | **INJUNCTIVE, AND OTHER** |
|  | : | **RELIEF FOR VIOLATIONS OF** |
| POLAR ELECTRO OY and | : | **15 USC § 1125(a) AND** |
| POLAR ELECTRO INC., | : | **RELATED CLAIMS** |
| Defendants. | : |  |
|  | : | **DEMAND FOR JURY TRIAL** |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff WHOOP, Inc. ("Plaintiff" or "WHOOP"), by and through its counsel, brings this Complaint against Polar Electro Oy and Polar Electro Inc. (collectively, "Defendants" or "Polar") and alleges and states as follows:

## INTRODUCTION

1.    Since its founding over a decade ago, WHOOP has been on the cutting edge of collecting biometric information through a wearable device that is then used by WHOOP to provide its users with insights into their physiology that can help unlock their full potential.

2.    From its first commercial release, the wearable has featured a revolutionary appearance that flew in the face of conventional fitness trackers and gave it a distinct and highly recognizable aesthetic. Over the past decade, that unique aesthetic has developed into iconic trade dress, making the WHOOP wearable instantly recognizable to consumers:

1



3.      Seeking to trade off the goodwill that WHOOP has developed over the past decade, as well as the unique association between the well-known WHOOP trade dress and the popular WHOOP wearable, Defendants recently developed and released a health monitoring device that makes unauthorized use of the WHOOP trade dress, despite knowledge that WHOOP owns and exclusively uses the trade dress. Images of a WHOOP device featuring the trade dress next to Defendants' infringing product leave no doubt that this infringement is a willful attempt to misappropriate WHOOP intellectual property to offer an inferior and misleading product:

| WHOOP Product Featuring the WHOOP Trade Dress | Polar Infringing Product |
|---|---|
| | |

4.      Plaintiff seeks damages and injunctive relief for trade dress infringement, false designation of origin, unfair competition, and dilution by Defendants in violation of the laws of the United States and the State of New York.

**PARTIES**

5.     Plaintiff WHOOP, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at One Kenmore Square, Suite 601, Boston, Massachusetts 02215.

6.     Upon information and belief, Defendant Polar Electro Inc. ("Polar USA"). is a company organized and existing under the laws of the State of New York, with a principal place of business at 15 Grumman Road West, Suite 1205, Bethpage, New York 11714.

7.     Upon information and belief, Defendant Polar Electro Oy is a company organized and existing under the laws of Finland, with a principal place of business at Professorintie 5, Kempele, Pohjois-Pohjanmaa, 90440, Finland.

**JURISDICTION AND VENUE**

8.     This action arises under federal law, state law, and common law. This Court has original subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1138(a)-(b) (trade dress, false designation of origin, and unfair competition), and 15 U.S.C. § 1121 (Lanham Act). This Court has subject matter jurisdiction over the remaining claims under 28 U.S.C. § 1367 because they are substantially related to Plaintiff's federal claims such that they form part of the same case or controversy.

9.     Defendants are subject to specific jurisdiction in this Court, *inter alia*, because they conduct business in the District and have committed at least some of the acts complained of herein within this District.

10.     On information and belief, Defendants sell large quantities of various products, including wearable health monitoring devices, to customers in New York, maintain an interactive website and health monitoring application, accessed by residents of New York, and otherwise avail

3

themselves of the privilege of doing business in the State of New York. Both of the Defendants have purposely directed their activities, including the illegal acts against Plaintiff described below, toward this District, and this action arises from those activities.

11.    The Court has personal jurisdiction over Defendant Polar USA because the company is organized and existing under the laws of the State of New York and maintains a principal place of business in New York.

12.    The Court has personal jurisdiction over Defendant Polar Electro Oy pursuant to Federal Rule of Civil Procedure 4(k)(2) because Plaintiff's claims arise under federal law, Polar Electro Oy is not subject to jurisdiction in any state's courts of general jurisdiction, and this exercise of jurisdiction comports with due process.

13.    Polar Electro Oy has continuous and systematic contacts and minimum contacts with the entire United States that give rise to Polar's infringement, including expressly  targeting the United States, including New York, as a market for its infringing products.

14.    Polar intends to and does market and sell its infringing products in the United States.  For example, on the Polar website, https://www.polar.com/en/loop, consumers ordering the infringing device may choose the country of purchase for updated pricing and shipping information, and the United States of America is one of the options.

15.    Polar Electro Oy has also sought to avail itself of United States intellectual property protections.  It is the owner of 24 active federal trademark registrations in the United States, as well as one pending federal trademark application. Additionally, Polar Electro Oy owns numerous patents in the United States, registered through the United States Patent and Trademark Office.

16.    Polar Electro Oy has voluntarily filed litigation in the United States previously, including in federal district court and at the USPTO Trademark Trial and Appeal Board.

17.    Polar Electro Oy has purposefully availed itself of the privileges of conducting activities in the United States and invoked the benefits and protections of the United States' laws, including by forming a subsidiary in the United States, seeking and obtaining trademark and patent protection from the USPTO, engaging in litigation in the United States, and selling products into the United States, including to consumers in New York. Accordingly, jurisdiction in this forum is proper.

18.    Venue is proper in this District under 28 U.S.C. § 1391.

## THE WHOOP TRADE DRESS

19.    Since its founding in 2012, WHOOP has expended considerable time and effort developing premium hardware, software, and analytics to unlock human performance and monitor health.

20.    As a result of the tireless efforts of WHOOP product developers and engineers, the WHOOP physiological monitoring device (the "WHOOP Wearable") has established a reputation as an industry leader in health monitoring devices.

21.    The initial product released by WHOOP was a wearable optimization system designed for elite athletes and teams, to help them perform at their highest levels by gaining greater visibility into their bodies' needs, but WHOOP has expanded its target consumers to include all general consumers, including general consumers interested in health and wellness.

22.    The WHOOP Wearable allows consumers to track daily behaviors and metrics like sleep, strain, recovery, and more, to help users optimize their physical and mental performance.

23.    Since at least as early as 2015, when WHOOP released the first commercial version of the WHOOP Wearable, the WHOOP Wearable has born distinctive features designed to differentiate it from competitor products.

24.     Specifically, the overall appearance of the WHOOP Wearable, in all of its iterations over the past decade, includes at least the following features, the combination of which create a non-functional and distinctive trade dress: a continuous fabric band that wraps over the device (i.e., a faceless device) with thin metal accents on the sides of the device, an example of which is shown below (the "WHOOP Trade Dress").



25.     Since 2015, WHOOP has continuously used the WHOOP Trade Dress with the intention of creating a recognizable, iconic, unique form factor that consumers can readily identify as a product that is solely available from WHOOP.

26.     This unique faceless design with the continuous fabric band and thin metal accents was revolutionary to the health tracking wearables industry, which was previously dominated by wearable devices with increasingly elaborate displays.  It was also recognized for its innovation and distinctive aesthetics.  For example, WHOOP won the Red Dot Award: Product Design 2016, one of the largest and most prestigious international product design awards in the world, for the innovative design of the WHOOP Wearable.

27.     The WHOOP Trade Dress is not functional. The design features embodied by the WHOOP Trade Dress are not essential to the function of the wearable device (i.e., tracking fitness and health), do not make the device cheaper or easier to manufacture, and do not affect the quality

of the device. The design embodied by the WHOOP Trade Dress is not a competitive necessity, as there are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the WHOOP Trade Dress. Indeed, several other providers of wearable health monitoring devices offer products that do not feature the WHOOP Trade Dress, representative examples of which are shown below (offered by Apple, Fitbit, Pavlok, and Garmin, respectively), including screenless products that eliminate or reduce distractions, in addition to tracking fitness and health.



28.    The features of the WHOOP Trade Dress serve to render the WHOOP Wearable, the embodiment of the WHOOP Trade Dress, as a distinct product originating solely from WHOOP.

29.    The WHOOP Wearable has been commercially successful, has received a large volume of unsolicited media attention, and has been featured in many popular publications nationwide and internationally.

30.    As a result of long and substantial use, sales, advertising, and third-party recognition, the WHOOP Trade Dress is widely and instantly recognizable for its unique design and is associated with one source, namely, WHOOP. WHOOP thus has strong common law rights in the WHOOP Trade Dress.

31.     Based on its strong common law rights in the WHOOP Trade Dress and the secondary meaning WHOOP established in the WHOOP Trade Dress through the substantially exclusive use of the design for a decade, WHOOP filed a pending federal application for one embodiment of the WHOOP Trade Dress (App. Serial No. 99/080,005) for use in connection with "Health monitoring devices for capturing and transmitting physiological metrics to be available on an online analytic system; Wearable heart rate monitors" in International Class 10 (the "Application"). As described in the Application, the trade dress for which WHOOP has filed its application includes:

> [A] three-dimensional configuration of a wearable device comprised of a U-shaped clasp on which the word WHOOP appears on a crossbar, with sides that hinge distally from the crossbar into a rectangular sensor device (not visible) and allow the clasp to open and close into place over the sensor device. The strap is the band which connects to the sensor device on one end and the crossbar on the other and, when closed, wraps around the entire design and lays flat over the sensor device and snug on the wrist of the wearer. The word WHOOP and the edging detail on the side of the wearable device, both featured in broken lines, are not claimed as part of the mark[.]



32.     WHOOP has invested substantial time, money, and effort to advertise and promote the WHOOP Wearable and the WHOOP Trade Dress in the United States and around the world through virtually every available type of media, including print publications, television, and the Internet (e.g., via its own website, banner ads, and social media, including Facebook, Twitter, Instagram, TikTok, Pinterest, and LinkedIn). WHOOP prominently displays the WHOOP Trade

Dress on its website and in all of its marketing materials. By virtue of its efforts, WHOOP has developed substantial recognition and goodwill in its unique and distinctive WHOOP Trade Dress.

33.    The public's association of the WHOOP Trade Dress with WHOOP has been enhanced by advertisement of the WHOOP Wearable that prominently features the WHOOP Trade Dress and encourages consumers to identify the WHOOP Wearable by the WHOOP Trade Dress (e.g., "Is your crush wearing a WHOOP?"). Exemplary advertisements are reproduced below.

  

Ex. 1.

34.    WHOOP also promotes the WHOOP Wearable in connection with the WHOOP Trade Dress throughout the United States through partnerships with well-known individuals, professional sports associations, college sports teams, and industry partners. For example, WHOOP has partnered with celebrities, such as global music icon Niall Horan, organizations, such as the Professional Golf Association (PGA), and the National Football League (NFL), Warner Bros. Discovery, and Notre Dame Athletics, and professional athletes, such as Patrick Mahomes (football), Cristiano Ronaldo (soccer), Michael Phelps (swimming), and Aryna Sabalenka (tennis), among many others.

35.    WHOOP relies on the WHOOP Trade Dress in its marketing materials, investing heavily in brand recognition from trade dress. For example, WHOOP promotes its partnerships

with various professional athletes and celebrities by publishing videos and images of these individuals wearing the WHOOP Wearable to encourage identification of the WHOOP Wearable based on the distinct design of the device alone.







Ex. 1.

36.    As a result of the widespread use and display of the WHOOP Trade Dress by WHOOP in association with its wearable device, (a) the public has come to recognize and identify the products bearing the WHOOP Trade Dress as emanating from WHOOP, (b) the public recognizes that products bearing the WHOOP Trade Dress constitute high-quality products that conform to the specifications created by WHOOP, and (c) the WHOOP Trade Dress has established strong secondary meaning and extensive goodwill.

37.    In addition to substantial advertising and promotional activities conducted by WHOOP, the WHOOP Wearable has received and continues to receive widespread unsolicited media coverage and attention, including in industry publications and general third-party articles,

press releases, and videos with worldwide distribution. For example, the WHOOP Wearable, along with pictures showing the WHOOP Trade Dress, has appeared in *Forbes*, *Sports Illustrated*, *The New York Times*, *Good Housekeeping*, *Conde Nast Traveler*, *Cosmopolitan*, and *People*, among countless other publications in print and online.

38.     Indeed, it is routine for articles to identify users of the WHOOP Wearable solely through images from afar based on the distinctive WHOOP Trade Dress. For example, in an article published by *People* on July 10, 2024, the author reports that Prince William wore a WHOOP Wearable at the UEFA EURO quarterfinals, along with a picture of the device, as shown in the excerpt below. Ex. 2.





39.     In a separate article reporting on Prince William wearing a WHOOP Wearable, the author identifies the WHOOP Wearable at a distance based on the distinctive design, shown in the images below: "To the untrained eye this might have just looked like a black canvas band wrapped around his wrist. But fit and athletically gifted people, such as me, instantly recognize it as the It

fitness accessory worn by Michael Phelps, Tiger Woods, Rory McIlroy and the like." Ex. 2. The author further comments on the instant recognizability of the design: "When you start using Whoop, you get high on the silent respect that comes from fellow wearers when they get a flash of your wrist." *Id.*



Prince William was seen wearing a Whoop device while watching England v Switzerland at the Euros
REX SHUTTERSTOCK

40.    Third-party articles regularly tout the distinctive nature of the WHOOP Wearable and its role in popular culture. *See, e.g.*, Ex. 2 (*Wired*) ("In a sea of nearly identical fitness trackers, Whoop stands apart."), (*Medium*) ("the Whoop strap has become the latest status symbol in our wellness-obsessed culture."), (*CNET*) ("You've probably seen this discreet, screenless band on the wrists of sports superstars like Partick Mahomes, Cristiano Ronaldo and Mathieu van der Poel"), (*Independent*) ("One of the hottest products right now is the Whoop strap. From basketball superstar LeBron James, to the EF Pro Cycling team, the list of VIP users keeps growing – and it's become more talked about than ever").

41.    Trade dress serves to identify and distinguish the source of products in the marketplace through distinctive design elements and visual appearance – i.e., it allows consumers to identify a product and its source based solely on the design and appearance of the product, rather

than any associated trademark use. WHOOP has achieved this type of source identification and trade dress recognition with its WHOOP Trade Dress, which allows consumers to identify a WHOOP Wearable based on design and appearance alone.

42.     In fact, the WHOOP Trade Dress has become so iconic and beloved that consumers have created their own forums for documenting people wearing the popular WHOOP Wearable based on images and videos. For example, there is an Instagram page called "Whoop In The Wild," which is "[n]ot affiliated with WHOOP," is "always on the hunt" for images of public figures wearing the WHOOP Wearable based solely on its use of the WHOOP Trade Dress. In the majority of the photos and videos posted to this Instagram page, the WHOOP trademark is not visible, so consumers are identifying the wristbands as WHOOP Wearables by the WHOOP Trade Dress alone, as shown in the representative examples below. *See* Ex. 3.











43.    Similarly, users of the social media platform Reddit have created a sub-thread for "WHOOP sighting[s]" where users post images of athletes and celebrities seen wearing products embodying the WHOOP Trade Dress.  *See* Ex. 4.  In the majority of the photos and videos posted to this sub-thread, the WHOOP trademark is not visible, so consumers are identifying the wristbands as WHOOP Wearables by the WHOOP Trade Dress alone, as shown in the representative examples below. *See id.*







44.     As demonstrated by the examples above, the WHOOP Trade Dress serves as a quintessential example of effective trade dress, as its form effectively communicates to consumers the source of the product, allowing consumers to recognize the WHOOP Wearable from a distance based on the distinctive, unique design alone. Media, consumers, and fans routinely recognize and identify the WHOOP Wearable based on the WHOOP Trade Dress alone.

45.     The WHOOP Trade Dress is instantly recognized, highly sought after by the general public, and a valuable company asset.

<u>**Polar's Unlawful Infringement**</u>

46.     Upon information and belief, Polar is in the business of manufacturing, selling, and distributing consumer electronics, including wearable health monitoring devices.

47.     In September 2025, Plaintiff became aware of the launch of Polar's knockoff WHOOP Wearable, the Polar Loop, depicted below.



48.     The Polar Loop (the "Infringing Wearable") is a wholesale copy of the WHOOP Trade Dress, including use of a continuous fabric band wrapped across the device to create a faceless front and featuring thin metal or metallic accents around the device, including the use of metal accents across the front of the device used to mimic the trim on the WHOOP Wearable. Indeed, as described by Polar, the device features "[a] soft textile band pair[ed] with a slim buckle" (Ex. 5) – i.e., a continuous fabric band and thin metal or metallic accents across the device.



49.     The obvious and confusing similarity between the WHOOP Wearable embodying the WHOOP Trade Dress and Polar's Infringing Wearable is amplified when each product is seen as worn on the user's wrist:

| WHOOP Wearable | Infringing Polar Wearable |
|---|---|

Exs. 1, 5.

50.     Upon information and belief, Polar announced that it was launching the Infringing Wearable in September 2025.

51.     The Infringing Wearable recently became available for purchase in the United States on Polar's website at https://www.polar.com/us-en/loop.

52.     In addition to copying the design of the WHOOP Wearable and adopting the WHOOP Trade Dress without authorization from WHOOP, Polar copied the overall look and feel of the advertising of the WHOOP Wearable, further encouraging consumers to associate the Infringing Wearable with WHOOP and intentionally trading off of the goodwill and reputation WHOOP has built over a decade.

53.     For example, Polar advertises the Infringing Wearable in connection with images that share a highly similar style with those that WHOOP uses to promote the WHOOP Wearable, representative examples of which from the parties' respective websites and social media pages are provided below.

| WHOOP images of WHOOP Wearable | Polar images of Infringing Wearable |
|---|---|



| WHOOP images of WHOOP Wearable | Polar images of Infringing Wearable |
| --- | --- |
| | <br /> |

| WHOOP images of WHOOP Wearable | Polar images of Infringing Wearable |
|---|---|
|  |  |
|  |  |
|  |  |

| WHOOP images of WHOOP Wearable | Polar images of Infringing Wearable |
|---|---|
|    |    |

| WHOOP images of WHOOP Wearable | Polar images of Infringing Wearable |
|---|---|



Exs. 1, 5.

54.    Polar promotes the Infringing Wearable by highlighting the exact same benefits of the device as WHOOP highlights of the WHOOP Wearable, representative examples of which are set out in the table below. The nearly identical marketing language, when combined with Polar's adoption of the WHOOP Trade Dress and Polar's adoption of the same style of photography for its promotional materials, further underscores Polar's intent to create an association in the minds of consumers between WHOOP and the Infringing Wearable in order to confuse consumers, trade on the goodwill and reputation WHOOP has spent a decade developing, and compete unfairly with WHOOP.

| Statements from WHOOP about WHOOP Wearable | Statements from Polar about Infringing Wearable |
|---|---|
| "WHOOP has a minimalist, screen-free design to help you focus when it matters most – without any pings, distractions, or unnecessary bells & whistles." Ex. 1. | "Zero Distractions. Imagine a day with no annoying notifications. No beeping. No screen lighting up your wrist. POLAR Loop is built to stay quiet, so you can stay focused." Ex. 5. |
| "WHOOP also auto-detects activity so you can 'start and stop' without tapping any screens." Ex. 1. | "Automatic Tracking. Never think of starting or stopping again. POLAR Loop tracks sleep, steps, activity, and training automatically – no buttons, no apps, no need to remember a thing." Ex. 5. |
| "Wear it 24/7" Ex. 1. | "24/7 Health Tracking" Ex. 5. |
| "WHOOP tracks all four stages of sleep — slow wave sleep (SWS), REM, light, and awake — with near-perfect accuracy. Each stage serves a different purpose in your recovery." Ex. 1. | "Sleep Tracking. Tracks how much deep, light, and REM sleep you get each night — so you can understand how well your body restores itself and spot patterns that affect recovery." Ex. 5. |
| "One wearable. Thousands of ways to wear it. Designed by you. For you. with WHOOP Your Way." Ex. 1.<br><br>"Create a look that's uniquely you." Ex. 1. | "Swap bands, switch buckles, and choose your color. POLAR Loop is made to match your look — and your lifestyle." Ex. 5. |

| | |
|---|---|
| "With 24/7 monitoring across sleep, strain, stress, and heart health, WHOOP gives you a complete view of your health — so you can make smarter decisions every day." Ex. 1. | "With 24/7 tracking of heart rate, sleep, and daily activity, POLAR Loop delivers meaningful insights to help you enhance your well-being, fitness, and daily performance—without distractions or data overload." Ex. 5. |
| "Your WHOOP Sleep Performance Score is more than hours in bed, it reflects how well your body actually recovered overnight." Ex. 1. | "Combines your sleep and autonomic nervous system data to show how well your body recovered overnight...." Ex. 5. |
| "For unmatched precision and insights, heart rate sensors collect data points every second–24/7." Ex. 1. | "24/7 Activity Tracking. Measures all your movement throughout the day—not just workouts—so you can see how every step adds up to real progress." Ex. 5. |

55.   Several third-party news outlets and industry publications highlight the striking similarity between the appearance of the Infringing Wearable and the WHOOP Wearable. *See, e.g.*, Ex. 6 (*PC Mag*) ("in a design familiarized by Whoop"), (*Mashable*) ("Whoop dupe"), (*DC Rainmaker*) ("just like Whoop"), (*Bloomberg*) ("Whoop-Like Fitness Band"), (*Tom's Guide*) ("the design is reminiscent of the Whoop band"), (*MSN*) ("it looks like a Whoop band"), (*Gadgets & Wearables*) ("The Loop and Whoop 5.0 share the same stripped-down aesthetic. No buttons or a display. Just a slim rectangular module housed in a band that's meant to disappear into your daily life.").

56.   These third-party articles highlight the risk of both pre-sale and post-sale consumer confusion. Only with a level of close examination beyond what is found in the marketplace can a consumer even be certain that Polar's Infringing Wearable is not literally the WHOOP Wearable, given the close similarity in design. Any modest design differences do not alleviate the risk of post-sale consumer confusion, as the products look virtually identical when viewed from even a few feet away on people's wrists, as they are intended to be worn.

57.   As reflected in the headlines from various third-party news outlets and industry publications, Polar designed the Polar Loop using the WHOOP Trade Dress to compete directly

with WHOOP, despite the limited functionality of Polar's product. *See, e.g.*, Ex. 7 (*Forbes*) ("Polar Launches Whoop Rival Subscription-Free Screenless Health Tracker"), (*PC Mag*) ("Polar Launches Whoop-Like Screenless Fitness Tracker, No Subscription Needed"), (*Tech Radar*) ("Polar reveals its Loop screenless fitness tracker, and it looks like a Whoop band without the subscription"), (*Cycling Weekly*) ("Polar's new wearable is screen-free, subscription-free and a direct competitor to Whoop"), (*DC Rainmaker*) ("Polar Says Consumer-Focused Whoop Competitor Coming This Fall"), (*TechRadar*) ("Polar reveals new details of its subscription-less, screen-less Whoop rival").

58.    The Infringing Wearable promoted and sold by Polar in connection with the WHOOP Trade Dress is highly similar to the WHOOP Wearable legitimately sold in connection with the WHOOP Trade Dress.

59.    Upon information and belief, Plaintiff and Defendants market and sell wearable health monitoring devices to the same class of consumers, including general consumers.

60.    Plaintiff and Defendants market and offer their products for sale through the same channels of trade, including their websites and social media.

61.    Upon information and belief, Polar markets and sells the Infringing Wearable in the same geographic regions that WHOOP markets and sells the WHOOP Wearable in connection with the WHOOP Trade Dress.

62.    As a result of Polar's marketing and sale of the Infringing Wearable  in connection with the WHOOP Trade Dress, consumers are likely to be confused such that consumers will erroneously believe that the Polar Loop product is affiliated, connected, or associated with, or in some way related to WHOOP or the WHOOP Wearable.

63.    Upon information and belief, Polar knowingly adopted the WHOOP Trade Dress on its Infringing Wearable with the express intention of confusing consumers and misappropriating the goodwill and business reputation built by WHOOP.

64.    Polar advertises itself as the company that "launched an entire industry" of wearable devices in 1977.

65.    As a competitor in the wearable health monitoring devices industry since the inception of WHOOP, Polar is undoubtedly aware of WHOOP, the success of the WHOOP Wearable, and WHOOP ownership of the WHOOP Trade Dress, including rights based on substantially exclusive, continuous use of the WHOOP Trade Dress in the United States since as early as 2015. Polar has further been on constructive notice of WHOOP trade dress rights since at least March 12, 2025, when WHOOP filed its federal trademark application for registration of one embodiment of the WHOOP Trade Dress.

66.    On September 22, 2025, WHOOP sent Defendants a letter, requiring, *inter alia*, that Defendants immediately cease all sale and advertising of the Infringing Wearables and any other products featuring designs or trade dress that is identical or confusingly similar to the WHOOP Trade Dress. Ex. 8.

67.    Upon information and belief, having intentionally copied the WHOOP Trade Dress in designing the Infringing Wearables in order to gain an unfair commercial advantage by mimicking WHOOP and trading on the goodwill of the iconic WHOOP trade dress, Defendants are well-aware that they are infringing on WHOOP intellectual property.  Additionally, Polar has been on actual notice that it infringes the WHOOP Trade Dress since at least September 22, 2025, when WHOOP sent the letter regarding Polar's infringement of the WHOOP Trade Dress. Thus,

since at least September 22, 2025, Defendants' infringement of the WHOOP Trade Dress has been willful and intentional.

68.    Polar continues to sell and offer for sale the Infringing Wearables in the United States, despite being put on notice of the trade dress rights owned by WHOOP, which constitutes willful trade dress infringement and unfair competition.

69.    Polar's unauthorized use of the WHOOP Trade Dress in connection with highly similar, yet inferior, products to those offered by WHOOP in connection with the iconic WHOOP Trade Dress will continue to cause consumer confusion and irreparable harm to WHOOP and its goodwill and reputation in the marketplace.

## FIRST CAUSE OF ACTION
### Federal Trade Dress Infringement
*Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

70.    WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

71.    The WHOOP Trade Dress is non-functional and distinctive based on, among other things, extensive nationwide use, promotion, marketplace success, and recognition, and were so before Polar first sold, offered for sale, distributed, advertised, or promoted the Infringing Wearable.

72.    Polar's use of the WHOOP Trade Dress is without permission or authorization from WHOOP and in willful disregard of the rights of WHOOP to control its intellectual property.

73.    Polar's unauthorized use of the WHOOP Trade Dress in commerce, as described above, has caused and is likely to cause confusion, mistake, or deception, and is likely to cause and has caused consumers to believe incorrectly that the Infringing Wearable is produced, sponsored, authorized, or licensed by or are otherwise connected to or affiliated with WHOOP.

74.    Polar's unauthorized use of the WHOOP Trade Dress has harmed and will result in future harm to the reputation of WHOOP and its goodwill in its WHOOP Trade Dress in the marketplace.

75.    Polar's acts are willful, wanton, reckless, and intended to confuse the public and to injure WHOOP.

76.    As a direct and proximate result of the foregoing acts, WHOOP has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

77.    WHOOP is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits, and advantages obtained by Polar as a result of its infringing acts.

78.    There is no adequate remedy at law that can fully compensate WHOOP for the harm caused by Polar's infringement, which is ongoing. Accordingly, WHOOP is entitled to injunctive relief prohibiting Polar from continuing to infringe the WHOOP Trade Dress or any designs confusingly similar thereto.

**SECOND CAUSE OF ACTION**
**Federal Unfair Competition and False Designation of Origin**
*Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

79.    WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

80.    Polar's use of the WHOOP Trade Dress without consent or authorization from WHOOP constitutes false designation of origin, which has caused and is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of Polar with WHOOP, or as to the origin, sponsorship, or approval of Polar's goods or commercial activities by WHOOP, in violation of 15 U.S.C. § 1125(a).

81.     Polar acted unfairly and deceptively against WHOOP by infringing intellectual property rights of WHOOP, including its WHOOP Trade Dress, with the Infringing Wearables and using the Infringing Wearables to compete improperly with WHOOP.

82.     Such conduct by Polar is likely to confuse, mislead, and deceive Polar's customers, purchasers, and members of the public as to the origin of Defendants' product and/or the origin of the WHOOP Trade Dress and cause said persons to believe mistakenly that Defendants and/or its products have been sponsored, approved, authorized, or licensed by WHOOP or are in some way affiliated or connected with WHOOP, all in violation of 15 U.S.C. § 1125, and constitutes false designation of origin and unfair competition with WHOOP.

83.     Defendants' actions were undertaken willfully with full knowledge of the falsity of such designation or origin and unfair competition.

84.     WHOOP is informed and believes, and thereon, alleges that Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendants' false designation of origin and unfair competition in an amount that is not presently known to WHOOP. By reason of Defendants' actions constituting false designation of origin, false or misleading statements, false or misleading descriptions of fact, false or misleading representations of fact, and unfair competition, WHOOP has been damaged and is entitled to monetary relief in an amount to be determined at trial.

85.     Due to Polar's actions, WHOOP has suffered and continues to suffer great and irreparable injury for which WHOOP has no adequate remedy at law, and WHOOP is entitled to injunctive relief.

## THIRD CAUSE OF ACTION
### New York State Common Law Trade Dress Infringement

86.    WHOOP re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

87.    WHOOP is the owner of the WHOOP Trade Dress and has rights under the WHOOP TRADE DRESS through the filing of its federal application and specimen of use.

88.    Defendants willfully and knowingly used, and continue to use, the WHOOP Trade Dress in interstate commerce for purposes of advertising, offering for sale, and selling the Infringing Wearable without the consent of WHOOP.

89.    Defendants' use of the WHOOP Trade Dress in connection with its business is likely to cause confusion, cause mistake, or deceive because it suggested that the goods provided by Defendants are the same as the goods legitimately bearing the WHOOP Trade Dress. Defendants' use is likely to cause confusion because it also suggests that Defendants' business, or the goods provided by its business in connection with the WHOOP Trade Dress, originate from, or are sponsored, authorized, or otherwise connected with WHOOP.

90.    The goods provided by Defendants are not, in fact, authorized, sponsored, or otherwise connected with WHOOP.

91.    Defendants' unlawful actions and unauthorized use of the WHOOP Trade Dress has materially damaged the value of the WHOOP Trade Dress, caused damage to WHOOP's reputation, and infringed WHOOP intellectual property rights.

92.    As a proximate result of Defendants' actions, WHOOP has suffered, and will continue to suffer, immediate and irreparable harm, as well as great damage, including to its business, good will, reputation, and profits in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Unfair and Deceptive Business Practices Under**
*NY Gen. Bus. L. § 349*

93.    WHOOP re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94.    This claim arises under the laws of the State of New York.

95.    Defendants have engaged and are engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of § 349 of the NY General Business Law.

96.    Defendants' use of the WHOOP Trade Dress in connection with the Infringing Wearable is likely to cause confusion, cause mistake, or deceive because it suggests that the goods and services provided by Defendants are the same as the goods and services legitimately bearing the WHOOP Trade Dress.  Defendants' use is likely to cause confusion because it also suggests that their business, or the goods and services provided by its business in connection with the WHOOP Trade Dress, originate from, or are sponsored, authorized, or otherwise connected with WHOOP.

97.    The Infringing Wearable offered by Defendants is not, in fact, authorized, sponsored, or otherwise connected with WHOOP.

98.    Defendants' conduct is likely to mislead a sensible consumer acting reasonably under the circumstances.

99.    Defendants' conduct has resulted or is likely to result in consumer injury or harm to the public interest.

100.    In addition, Defendants' unfair and deceptive business practices have caused WHOOP to suffer, and continue to suffer, substantial injury, including damage to its reputation

34

and goodwill and to the value of the WHOOP Trade Dress.

## FIFTH CAUSE OF ACTION
### Trademark Dilution
*N.Y. Gen. Bus. Law. § 360-L*

101.    WHOOP re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

102.    The WHOOP Trade Dress is valid, protectable trade dress that is distinctive and has acquired further secondary meaning through widespread sales and marketing. A significant number of the consuming public associates the WHOOP Trade Dress with a single source, WHOOP. Thus, WHOOP Trade Dress is extremely strong.

103.    Defendants' use of the WHOOP Trade Dress in connection with the Infringing Wearable is likely to impair the distinctiveness of the WHOOP Trade Dress because the ordinary consumer is likely to perceive the Infringing Wearables bearing the WHOOP Trade Dress as identical or substantially similar to the goods and services legitimately bearing the WHOOP Trade Dress.

104.    Accordingly, Defendants have violated New York General Business Law § 360-L, which states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

105.    Because of Defendants' dilution of the WHOOP Trade Dress, including Defendants' willful and intentional conduct, WHOOP is entitled to injunctive relief under New York General Business Law § 360-L.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment against Defendants on each and every claim as set forth above and an award of relief, including the following:

A. Judgment in favor WHOOP and against Defendants in an amount to be determined at trial, including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, and other damages, as permitted by law.

B. A preliminary and permanent injunction enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

1. Prohibiting Enjoined Parties from advertising, selling, promoting, or displaying the Infringing Wearable and/or any product that uses the WHOOP Trade Dress and/or anything confusingly similar thereto;

2. Prohibiting Enjoined Parties from using, registering, or attempting to register the WHOOP Trade Dress or any other trade dress or design that is confusingly similar to the WHOOP Trade Dress in any manner;

3. Prohibiting Enjoined Parties from representing by any means whatsoever, directly or indirectly, that Polar or any of its products or activities are associated, connected, or affiliated with WHOOP, and/or sponsored, authorized, or licensed by WHOOP;

4. Prohibiting Enjoined Parties from effecting assignments or transfers, forming new entities or associations or utilizing any other device for the

purpose of circumventing or otherwise avoiding the prohibitions set forth above; and

5. Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites, social media, marketing, promotions, or any other any reference to the WHOOP Trade Dress,  or any other mark that is confusingly similar to the WHOOP Trade Dress.

C. An Order directing Polar to, within 30 days after the entry of the permanent injunction, file with this Court and serve on the attorneys for WHOOP a report in writing and under oath setting forth in detail the manner and form in which Polar has complied with the injunction.

D. An Order adjudging that this is an exceptional case.

E. An award of attorneys' fees, costs, and expenses;

F. Such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: October 14, 2025                    Respectfully submitted,

*/s/ Kyle Nodes*
Kyle Nodes (NY Bar No. 5741046)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market St.
Philadelphia, PA 19103
Phone: (215) 963-5000
Facsimile: (215) 963-5001
kyle.nodes@morganlewis.com

John Hendershott (NY Bar No. 6018576)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 309-6000
Facsimile: (212) 309-6001
jack.hendershott@morganlewis.com

Joshua M. Dalton (*pro hac vice* forthcoming)
Katherine W. Soule (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Tel.: (617)-341-7700
Facsimile: (617)-341-7701
josh.dalton@morganlewis.com
katherine.soule@morganlewis.com

*Counsel for Plaintiff WHOOP, Inc.*